```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF MISSOURI
                        EASTERN DIVISION
```

UNITED STATES OF AMERICA,       )
                                )
          Plaintiff,            )
                                )
     v.                         )     No. 4:05 CR 662 CEJ
                                )                     DDN
CHARLES JOHNSON,                )
                                )
          Defendant.            )

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on February 17, 2006.

Defendant Charles Johnson has moved to suppress evidence and statements (Doc. 17). From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

**FACTS**

1(a).    On January 5, 2005, St. Louis Police Detective Edward Benoist applied to the Circuit Court of the City of St. Louis for a warrant to search 5101 Minnesota, apartment A, in St. Louis, for crack cocaine, marijuana, paraphernalia, records of narcotic transactions, firearms, and U.S. currency related to the sale of narcotics. In support of his application, Det. Benoist submitted his written, sworn affidavit. In the affidavit he set forth information provided, on three different occasions, by a reliable[1] confidential informant (CI). On December 28, 2004 the CI contacted Det. Benoist to describe the residents of 5101 Minnesota, apartment A, and how crack cocaine was

---

[1] Det. Benoist stated in the affidavit that this CI had provided information in the past that resulted in the arrests of five persons for possession of controlled substances and that warrants were issued against those arrested in each case.

stored and sold inside the residence. The CI described the sellers as a black male, approximately 25 years of age, approximately 155 pounds, and known as "C.J." The informant also described C.J.'s girlfriend, Janeen Humphrey, as a black woman of heavy build with braids. The affidavit recounted the CI's information that buyers of crack cocaine enter the front door of the apartment and wait in the living room while C.J. retrieves the crack cocaine from his bedroom, unless it is already on his person, and then conducts the sale. According to the informant, C.J. sells "twenties" and "fifties" pieces of crack cocaine 24 hours a day. The affidavit stated also that Janeen Humphrey sells her drugs there, retrieving them from a telephone in the bedroom. The CI told Det. Benoist that he/she had been inside 5101 Minnesota, apartment A, within the last 24 hours and saw C.J. possess two baggies of crack cocaine. On December 31, 2004, the CI again contacted Det. Benoist with information that C.J. bought several chunks of crack cocaine earlier in the day and was breaking it into "twenties" and "fifties" in preparation for sale.

    1(b). The affidavit went on to state that on January 3, 2005, after receiving the above information, Det. Benoist conducted surveillance on 5101 Minnesota, apartment A. He observed three white females enter the apartment through the front door. The females left the apartment approximately three to five minutes later and "fled the area on foot." A short time later, a black, heavy built woman left the apartment and drove off in a blue Ford Taurus, which had been parked directly in front of 5101 Minnesota. She returned a short time later.

    1(c). The affidavit stated that on January 4, 2005, Det. Benoist conducted another surveillance of 5101 Minnesota, apartment A. At that time he observed two white females enter the apartment through the front door and leave a short time later. Det. Benoist then observed a black male leave the apartment and enter a blue Ford Taurus, parked in front of the apartment building, with Missouri License 987-SSK. Det. Benoist followed it to the parking lot of the Seven-Eleven at Delor and Virginia streets. There, Det. Benoist saw a red Ford Escort park alongside the Ford Taurus. A person exited the Escort and entered the Taurus; moments later the same person left the Taurus, re-entered the

Escort and drove north on Virginia. The Taurus returned to 5101 Minnesota. The affidavit stated that the license plate on the Taurus is registered to Janeen Humphrey, with an address of 5101 Minnesota, apartment A.

    1(d). Later on January 4, 2005, the CI again contacted Det. Benoist with information that he/she had been inside 5101 Minnesota, apartment A, within the past 24 hours and that C.J. and Janeen were there with several chunks of crack cocaine and a few ounces of marijuana. The CI also observed three buyers enter the residence and purchase crack cocaine from C.J. and Janeen. The affidavit states that Det. Benoist received additional corroborating information from the utilities company, showing that the utilities at 5101 Minnesota, apartment A, are under the name of Janeen Humphrey.[2] See Gov. Ex. A at 2-4.

    2. On January 5, 2005, at 1:30 p.m., Circuit Judge Donald McCullin issued a search warrant for 5101 Minnesota, apartment A, based on Det. Benoist's affidavit. Gov. Ex. A at 1.

    3. On January 7, 2005, at 11:30 p.m., the search warrant for 5101 Minnesota, apartment A, was executed. The apartment complex contains approximately 20 one-story units adjacent to Highway 55. Each apartment has its own door, which opens to the outside. The St. Louis Police Mobile Reserve Unit knocked on the apartment A door, waited approximately one minute, heard activity inside, and then made a forced entry into the apartment. Det. Benoist and other officers entered right behind the Mobile Reserve officers. Three people were found in the apartment: defendant Charles Johnson, Janeen Humphrey, and her child. Det. Benoist immediately went to Charles Johnson and Janeen Humphrey, gave each a copy of the search warrant, and advised each one of the Miranda rights by reading them from a card. Mr. Johnson acknowledged that he understood his rights. He did not appear to be under the influence of drugs or alcohol. Two other officers were present in the living room of the apartment at this time.

---

[2] The affidavit also describes in vague language the results of an inquiry with the "Get Tough System."

4.	Det. Benoist then asked Johnson whether there were any drugs or weapons in the apartment. Johnson said that there was a small amount of marijuana on the kitchen table and that he was only trying to feed his family. Det. Benoist saw the marijuana and arrested Johnson for possessing it. Benoist then patted Johnson down and found a plastic baggie of cocaine on his person. Det. Benoist advised Johnson of the additional charge for possession of crack cocaine. Benoist then asked Johnson whether he had any more drugs or weapons in the house. Johnson said that they would find it anyway, and told the officers that there was a .22 caliber rifle in the front bedroom. Johnson said he bought it on the street for $100. Det. Benoist found and seized the weapon.

5.	During the execution of the search warrant, in addition to the drugs and weapon, the police also seized $534 in U.S. Currency and two pieces of mail showing the utilities in Janeen Humphrey's name. Gov. Ex. A at 6. The police took pictures of the items seized and of the door after it was forced open.

6.	On May 19, 2005, at 10:00 p.m., St. Louis Police Officer Jessie Harris was on uniform patrol in a marked vehicle in the First District. At that time he saw a vehicle without license plates being driven eastbound in the 2600 block of Osage. Officer Harris stopped the vehicle and asked the driver to produce his license and evidence of insurance. The driver was not able to produce a license but did identify himself as Charles Johnson and gave his birth date. Johnson's passenger gave her name as Janeen Humphrey. Johnson told Officer Harris that he had just purchased the car. Leaving Johnson and his passenger in the vehicle, Officer Harris returned to the police car to search the driver's name in a database. He was told that Johnson had outstanding arrest warrants, including one from Wisconsin, which matched his name and birth date. Office Harris returned to Johnson's car and placed him under arrest. Officer Harris then advised him of his <u>Miranda</u> rights. Johnson acknowledged these rights and made no statement.

7.	Officer Harris then searched Johnson and felt a lump that turned out to be a baggie filled with off-white chunks. Ms. Humphrey was not arrested.

**DISCUSSION**

In support of his motion to suppress, defendant argues that the searches of 5101 Minnesota, apartment A, St. Louis, Missouri on January 7, 2005, and of defendant's automobile on May 19, 2005, were executed without valid search warrants and without the valid consent of either Johnson or any other lawful resident of the apartment (Doc. 17). Furthermore, defendant argues that the automobile was stopped without probable cause. Consequently, defendant argues, any statements he made after his arrest, on either January 7 or May 19, 2005, are the fruit of unlawful arrests and thus violations of the Fifth Amendment.

January 7, 2005

The issues before this court when reviewing the validity of the search warrant are whether the supporting materials gave the issuing judge a substantial basis for concluding that probable cause existed for the issuance of the warrant, United States v. Luloff, 15 F.3d 763, 768 (8th Cir. 1994), and whether the warrant describes with "particular[ity] . . . the place to be searched and the persons or things to be seized." U.S. Const. amend. IV.

Probable cause means a "fair probability that . . . evidence of a crime will be found in a particular place," given the circumstances set forth in the affidavit. United States v. Horn, 187 F.3d 781, 785 (8th Cir. 1999) (quoting Illinois v. Gates, 462 U.S. at 238). Here, Det. Benoist's affidavit gave Judge McCullin a substantial basis for finding that probable cause existed for the issuance of the search warrant for 5101 Minnesota, apartment A. A reliable confidential informant told the officer about first hand information that Charles Johnson was possessing and selling crack cocaine on and before January 5, 2005, at 5101 Minnesota, apartment A. The information from the confidential informant was later corroborated by Det. Benoist's surveillance of the apartment house. Finally, the search warrant describes the particular place to be searched, 5101 Minnesota, apartment A, and the particular things to be seized. For these reasons, the search warrant was lawfully issued.

When the officers entered the apartment, they already had probable

cause to arrest defendant, based upon the information set forth in the affidavit. Probable cause to arrest without a warrant exists when the police have information sufficient to cause a reasonable person to believe that the defendant had committed an offense or was then committing an offense. Beck v. Ohio, 379 U.S. 89, 91 (1964); United States v. Sherrill, 27 F.3d 344, 347 (8th Cir. 1984); United States v. Nevils, 897 F.2d 300, 309 (8th Cir. 1990)(probable cause can be found in the information set forth in a search warrant affidavit).

The statements made by defendant to the police after they entered the apartment should not be suppressed. The government has the burden of establishing the constitutional admissibility of defendant's statements by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 169 (1986); Lego v. Twomey, 404 U.S. 477, 489 (1972). The admissibility of his statements depends upon whether they are constitutionally voluntary, Connelly, 479 U.S. at 163-67; and, when the statements are made during police interrogation while the defendant was in custody, whether the defendant had been advised of his constitutional rights to counsel and to remain silent, as prescribed by Miranda v. Arizona, 384 U.S. 436 (1966); and, if the statements were given during custodial interrogation, whether the defendant knowingly and voluntarily waived the Miranda rights, North Carolina v. Butler, 441 U.S. 369, 373, 375-76 (1979).

In this case, as soon as the officers located defendant, before he made any statement, he was advised of his Miranda rights. Defendant acknowledged his rights and waived them by thereafter making statements. Finally, none of defendant's statements were involuntary, because none was the product of police overreaching, such as coercion, deception, or intimidation; his will was not overborne and his ability to decide not to cooperate was not impaired. Colorado v. Connelly, 479 U.S. at 169-70; United States v. Jordan, 150 F.3d 895, 898 (8th Cir. 1998).

The cocaine on defendant's person was lawfully seized without a warrant because the seizure was incident to his lawful arrest. Items may be seized without a warrant, if seized incident to a lawful arrest. New York v. Belton, 453 U.S. 454, 461 (1981); United States v. Robinson, 414 U.S. 218, 235 (1973).

For these reasons, the items seized by the police on January 5, 2005, and defendant's statements should not be suppressed.

May 19, 2005

The drug contraband seized from defendant's person on May 19, 2005, should not be suppressed. To determine whether or not defendant's car was properly stopped on May 19, 2005, the court looks to see whether the traffic stop was lawful and whether any resulting investigatory detention was based on whether a reasonable suspicion objectively existed. Whren v. United States, 517 U.S. 806, 811-13 (1996) (the stop of a vehicle was valid because police had probable cause to believe defendant committed a traffic violation). Here, defendant drove a car without license plates, a violation of Missouri law. See Mo. Rev. Stat. § 301.130.7 (2000). Thus, Officer Harris had probable cause to believe the driver had violated the traffic laws. Defendant's subsequent arrest was lawful, because it was based upon the outstanding arrest warrant. Further, the seizure of the contraband from his person resulted from a lawful search of him incident to that arrest. New York v. Belton, 453 U.S. at 461; United States v. Robinson, 414 U.S. at 235.

Whereupon,

**IT IS HEREBY RECOMMNEDED** that the motion of defendant to suppress evidence and statements (Doc. 17) be denied.

The parties are advised they have ten (10) days to file written objections to this Report and Recommendation. The failure to file objections may result in a waiver of the right to appeal issues of fact.

/s/ David D. Noce
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on March 28, 2006.